CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

MICHAEL G. PITMAN (DCBN 484164)
Assistant United States Attorney
60 South Market Street, Suite 1200
San Jose, CA 95113
Telephone:    (408) 535-5040
Facsimile:     (408) 535-5081
Email: michael.pitman@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MATHEUS DUARTE,<br><br>Defendant. | Case No. 5:24-CR-00451-BLF<br><br>UNITED STATES' SENTENCING MEMORANDUM AS TO DEFENDANT MATHEUS DUARTE<br><br>Date:    December 2, 2025<br>Time:   9:00 AM<br>Place:   Courtroom 1, San Jose |

The United States of America ("United States") hereby respectfully submits the following Sentencing Memorandum as to Defendant Matheus Duarte ("Defendant") pursuant to Crim. L.R. 32-5(b).

**I.     SUMMARY OF UNITED STATES' SENTENCING RECOMMENDATIONS**

On August 7, 2024, Defendant was charged by Indictment with one count of Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349 & 18 U.S.C. § 1343 (Count One).  On July 22, 2025, Defendant pleaded guilty to Count One by way of a Plea Agreement entered into pursuant to Rule 11(c)(1)(A) and (c)(1)(B).  In that Plea Agreement, the parties agreed that the total offense level is 20, that the Court will order Defendant to pay restitution of at least $2,590,195 to DoorDash, Inc., that the Court will impose a forfeiture money judgment in the amount of $336,712, and that the government will recommend a sentence no higher than the range associated with total offense level 20.

The Presentence Investigation Report ("PSR") endorses the Plea Agreement's Guideline calculation, and recommends that Defendant be sentenced to: A below-Guidelines term of imprisonment of 28 months; a three-year term of supervised release; an order to pay restitution in the amount of $2,590,195 to DoorDash; an order to forfeit assets; and a special assessment of $100.

The United States agrees with the PSR's calculations but not the recommended prison sentence. While the PSR recommends a below-Guidelines term of imprisonment of 28 months, the United States recommends a mid-Guidelines prison term of 37 months. The United States agrees with the PSR's recommendations with respect to the remainder of the sentence.

## II. SUMMARY OF THE CASE

The facts of the case are set forth in great detail in the Plea agreement and PSR. In sum, Defendant participated in a scheme to defraud DoorDash by causing DoorDash to pay for deliveries which never occurred. DoorDash's business model involves heavy reliance upon independent-contractor drivers, or "dashers," who deliver items ordered by customers from local restaurants and other merchants. Customers can place orders using the DoorDash website or app, or the merchant's website. This process is facilitated by DoorDash software, including a program that allows certain DoorDash employees to make adjustments to orders using software called "Dispatch." Access to Dispatch is limited to authorized staff, password controlled, and requires two-factor authentication. Dispatch usually limits the number of dashers who can be working at any given time in a specific geographic area, and also assigns new orders to dashers using a proprietary algorithm, but those settings can be overridden by users with access to Dispatch.

The scheme at issue here involved DoorDash insiders manipulating Dispatch for nefarious purposes, and required several conspirators, months of planning, and coordinated implementation. The first phase of the scheme lasted from approximately November 3, 2020, to December 20, 2020, and worked as follows: Conspirators created fake DoorDash customer accounts and dasher accounts. They then used the customer accounts to place high value orders for food items from restaurants in the Bay Area. Once the orders had been placed, conspirators manipulated DoorDash's systems to hijack them and cause multiple dasher accounts to be paid dozens, or even hundreds, of times for delivering them. The manipulations occurred as follows: (1) DoorDash's system automatically assigned each order to a

random dasher; (2) a conspirator logged into the Dispatch system using a complicit DoorDash employee's credentials and located the order; (3) the conspirator unassigned the automatically assigned dasher from the order; (4) the conspirator manually reassigned the order to one of the fraudulent dasher accounts described above; (5) a conspirator operating the fraudulent dasher account "accepted" the assignment of the order; (6) the conspirator operating the Dispatch system marked the order "picked up" by the fraudulent dasher account; (7) the conspirator operating the fraudulent dasher account marked the order "delivered" – which resulted in the fraudulent dasher account receiving payment from DoorDash for delivering the order; (8) the conspirator operating the Dispatch system reverted the order from "delivered" to "picked up," which made the order live again; steps (5) through (8) were repeated dozens of times – each of which resulted in a payment to a fraudulent dasher account for having delivered the same order; and, finally the order was left as "delivered." This process played out extremely quickly. Steps (5) through (8) could be completed in less than a minute. In the most extreme example, one of the orders, a single order for $491 worth of goods from a liquor store, was reassigned approximately 500 times resulting in nearly $250,000 worth of payments to fraudulent dasher accounts. The November/December 2020 phase of the scheme ended when the complicit DoorDash employee – Tyler Thomas Bottenhorn (who was indicted on September 29, 2022 (Case No. 5:22-cr-00383-BLF) – was fired by DoorDash for reasons unrelated to the fraud, and his Dispatch credentials, which were crucial to the scheme, were revoked.

In total, DoorDash made at least $2,127,216 worth of fraudulent payments during the November/December 2020 phase of the scheme. Those payments made their way to 46 bank accounts held by 35 separate individuals.

A few months later, the conspirators recruited a new DoorDash employee and started the second phase of the scheme in February 2021, which ultimately resulted in a loss of at least $462,978. The February 2021 phase of the scheme bore many similarities to the November/December 2020 phase: All of the customer accounts used to place orders for the February 2021 phase of the scheme were associated with debit cards belonging to two conspirators who had also funded orders for the November/December 2020 phase, and they often used the same names and addressed. Payments associated with the February 2021 phase of the scheme were directed to 10 bank accounts belonging to 9

individuals, most of whom also received payments during the November/December 2020 phase of the scheme.

Defendant played an important role in both phases of the scheme. IP records and hotel records indicate that he was present at the hotels used by the conspirators, and Defendant appears to have been close to the scheme's mastermind as travel records indicate that the mastermind and Defendant flew from San Francisco to Miami together on New Years Eve 2020, shortly after the completion of the November/December 2020 phase of the scheme. Defendant also served as something of a bookkeeper for the scheme: His text messages reveal that he maintained several spreadsheets tracking customer and dasher accounts used in the scheme, the bank accounts associated with those accounts, and the true identities of the individuals who owned those accounts – presumably to allow the conspirators to track fraudulent payments generated by the scheme. Defendant also had a hand in creating customer and dasher accounts used in the scheme, and was personally involved in using compromised credentials to manipulate orders using in the Dispatch system.

Some of the dasher accounts used in the scheme were tied to bank accounts Defendant controlled. When the scheme triggered payments from DoorDash to the dasher accounts linked to these bank accounts, money was electronically deposited into them. In total, during the scheme these bank accounts received fraudulent electronic transfers from DoorDash totaling at least $336,713. Defendant knew that these payments were fraudulent, and that DoorDash would not have made them if DoorDash had known that the deliveries never occurred.

## III. SENTENCING CALCULATION

Trial courts, "while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 267 (2005); *see also Gall v. United States*, 552 U.S. 38, 51 (2007) (failure to calculate, or improperly calculating, the Guidelines range constitutes a procedural error at sentencing).

### A. The Fraud Loss – Count One, 18 U.S.C. § 1349

#### 1. *Fraud Loss Calculation*

The Guidelines provide that conspiracy to commit wire fraud and mail fraud in violation of Section 1349 should be sentenced under USSG § 2B1.1. Because Section 1349 has a statutory

maximum term of imprisonment of 20 years or more, the base offense level is 7 under USSG § 2B1.1(a)(1).  The Plea Agreement and PSR agree that Defendant's fraud caused a loss to DoorDash of at least $2,590,195, and Defendant's offense level is consequently increased by 16 levels under USSG § 2B1.1(b)(1)(I).

### 2. *Specific Offense Characteristic: Sophisticated Means, USSG § 2B1.1(b)(10)(C)*

The Plea Agreement and PSR agree that a two-level enhancement under USSG § 2B1.1(b)(10)(C) is appropriate.  According to the commentary for the Guidelines: "For purposes of subsection (b)(10)(C), 'sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means." USSG § 2B1.1 cmt. n.9(B).  In this case, Defendant participated in a scheme which involved the creation of multiple fraudulent customer accounts and dasher accounts, a coordinated, multi-step exploitation of a vulnerability in DoorDash software using insider access, and the transfer of funds between multiple bank accounts, including offshore accounts.  Such conduct is more than sufficient to justify the enhancement.

### B.  Zero Criminal History

Recent amendments to the Guidelines provide for a two-level reduction for offenders who satisfy the criteria set forth in USSG §§ 4C1.1(a)(1) through (a)(10), including presenting zero criminal history points.  The Court should grant a two-offense-level credit in this case because all the criteria set forth at Sections 4C1.1(a)(1) through (a)(10) are satisfied.

### C.  Acceptance of Responsibility

Defendant should receive a three-level credit for acceptance of responsibility under USSG § 3E1.1.  Credit for acceptance of responsibility applies only to a defendant who "clearly demonstrate acceptance of responsibility for his offense." USSG § 3E1.1.  In evaluating whether the credit should apply, it is appropriate to consider whether the defendant has truthfully admitted the conduct comprising the "offense(s) of conviction," and also truthfully admitted, or not falsely denied, any relevant conduct.

*Id.* comment. (n.1(A)). Here, the full three-level credit is appropriate because Defendant has truthfully admitted the relevant conduct sufficiently in advance of trial. The Court should not hesitate to grant the full, three-level credit in this case.

### D.    Resulting Guidelines Calculation

The Plea Agreement and PSR agree that Defendant's adjusted offense level is 20. Because Defendant is in Criminal History Category I, the sentencing table recommends a sentence between 33 and 41 months.

## IV.    SECTION 3553(a) FACTORS

Pursuant to the Sentencing Reform Act, 18 U.S.C. § 3553 the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" Section 3553(a), and, in so doing, the Court "shall consider," among other things: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established by the guidelines; (5) any pertinent policy statement; and (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a).

In this case, these factors support the sentence recommended by the United States, especially the nature and circumstances of the offenses, and the need for a sentence that reflects the seriousness of the offense and affords an adequate deterrence. The nature and circumstances of the offenses are extremely serious. Defendant's crimes were not isolated crimes of opportunity or the product of a brief lack of judgment. To the contrary, they were part of a long-term, multi-faceted, criminal scheme requiring many participants, months of planning, and coordinated implementation.

The history and characteristics of Defendant are also troubling. Defendant has the equivalent of a bachelor's degree, speaks three languages, was honorably discharged from the Brazilian Army, and has been in the United States since 2019. These were not acts born out of economic desperation, but

1  rather a conscious decision to enrich himself at the expense of others.

2  Finally, the need to avoid unwarranted sentencing disparities among defendants also militates
3  towards the sentence recommended by the United States.  Of the relatively few participants in the
4  scheme who were charged, Defendant was among the more culpable because he created fraudulent
5  dasher accounts, manipulated orders in the Dispatch system, and maintained records for the scheme.

6  On balance, the mid-Guidelines prison term recommended by the United States strikes an
7  appropriate balance of the factors set forth in Section 3553.

8  **V.    RESTITUTION**

9  The Plea Agreement and PSR agree that Defendant should be ordered to pay restitution in the
10 amount of $2,590,195 to DoorDash.  Restitution is appropriate under the Mandatory Victim Restitution
11 Act of 1996 ("MVRA") (largely codified at 18 U.S.C. § 3663A), which makes restitution mandatory for
12 certain crimes.  *See United States v. Kovall*, 857 F.3d 1060, 1064 (9th Cir. 2017) (the district court has
13 no discretion under the MVRA and "shall order" restitution) (quoting 18 U.S.C. § 3663A(a)(1),
14 (c)(1)(A)); *see also United States v. Lo,* 839 F.3d 777, 788 (9th Cir. 2016) ("[W]hen the crime of
15 conviction is mail fraud or other crime requiring proof of a scheme, a court is authorized to order
16 restitution 'on related but uncharged conduct that is part of a fraud scheme,' and is not limited to 'the
17 harm caused by the particular counts of conviction.'") (quoting *United States v. Thomsen*, 830 F.3d
18 1049, 1065 (9th Cir. 2016)); *see also United States v. Johnson*, 875 F.3d 422, 425 (9th Cir. 2017).
19 Accordingly, Defendant should be ordered to pay restitution of $2,590,195 to DoorDash.

20 **VI.   FORFEITURE**

21 The United States anticipates submitting a Motion for pOrder of Forfeiture requesting, in
22 accordance with the Plea Agreement, that the Court issue a forfeiture money judgment in the amount of
23 $336,712.

24 //
25 //
26 //
27 //
28 //

## VII. CONCLUSION

Defendant should be sentenced to: A term of imprisonment of 37 months; a three-year term of supervised release; an order to pay restitution in the amount of $2,590,195 to DoorDash; and a special assessment of $100.

Dated: November 25, 2025

Respectfully submitted

CRAIG H. MISSAKIAN
United States Attorney

s/ Michael G. Pitman
MICHAEL G. PITMAN
Assistant United States Attorney